## IN RE BENJAMIN CHAPNICK

Superior Court        New Haven County        File #49713

Present:  Hon. NEWELL JENNINGS, Judge.

Lorin W. Willis,        Attorney for Grievance Committee.

Omar W. Platt,        Attorney for Respondent.

### MEMORANDUM FILED JULY 3, 1936.

JENNINGS, J.  So many "weasel words" have been circulated about the investigation of unethical and unprofessional practices by some members of the New Haven bar that an

authoritative statement in reference thereto is called for.

Beginning in 1933 a group of the leading members of the New Haven County bar began to press upon the judges the need of an investigation into the improper practice of law in New Haven, particularly with reference to "ambulance chasing". The difficulty of securing investigators trained in this sort of work caused a very considerable delay in starting proceedings and nothing was done for some time. Eventually the same committee appeared before a formal meeting of the judges and recommended that the judges avail themselves of the services of a voluntary committee composed of representatives of insurance and public utility companies which had successfully conducted similar investigations in various cities of the East. Upon inquiry, the judges found that the men who would supervise the work of this committee in this State were members of our bar of the highest standing and their cooperation was invited. While the actual work of investigation was under the personal charge of Mr. McCardle, an attorney of Boston, the general supervision was placed in the hands of a special attorney appointed by the judges, Mr. Lorin W. Willis, Assistant State's Attorney for Fairfield County, to the end that the investigation, though made by an outside agency, should be at all times in the control of the judges. The investigators reported to Mr. Willis and, if the results obtained by them seemed to warrant such action, the witnesses whose names had been secured by the investigators were summoned to appear before Honorable John K. Beach, appointed Special Commissioner to hear the testimony. The stenographer was also appointed by the judges.

The investigation was formally started by the passage of the following order:

## ORDER IN RE INVESTIGATION INTO ALLEGED UNPROFESSIONAL AND UNETHICAL CONDUCT OF ATTORNEYS OF THE NEW HAVEN COUNTY BAR.

"Upon representations made to this Court there is reason to believe that certain members of the bar of the county of New Haven practicing in and about the city of New Haven have been guilty of unprofessional and unethical conduct, particularly in connection with the solicitation, preparation, trial and disposition of claims for alleged injuries to person and property arising out of the operation of motor vehicles

and other claimed acts of negligence, and out of other alleged violations of law; that public confidence in the administration of justice is being seriously affected by a common belief that such unprofessional and unethical conduct is widespread; and that such conduct seriously affects the public welfare by clog-ging the court dockets, delaying the hearing and disposition of proper litigation and increasing the expense of the main-tenance and operation of the courts.

"This Court, having general supervisory jurisdiction over the attorneys-at-law admitted to practice therein and being satisfied that there is need for a prompt and effective investi-gation by it of the alleged abuses in the administration of justice to the end that such disciplinary or other action may be taken as is provided by the statutes and the rules of court;

"Orders that the Honorable John K. Beach of New Haven is appointed a Special Commissioner to whom evidence rele-vant to any such unprofessional or unethical conduct may be submitted, with power to examine witnesses under oath at such times and places as he may direct, the hearings to be in private unless any person whose conduct is under investiga-tion requests a public hearing; and in so far as the conduct of any particular attorney is affected to report his findings and the evidence taken before him, so far as he shall deem it advisable to do so, to the Grievance Committee of the New Haven County Bar, and to make such reports and recommen-dations to this Court concerning unprofessional and unethical practices among attorneys-at-law as he shall deem advisable.

"And it is further Ordered that, in the event that any wit-ness summoned to testify before said Commissioner refuses to answer any relevant question, said Commissioner may report such fact to this Court which may summon such witness to appear before it, in public or private, as it deems proper, there to be examined concerning the matter in question.

"And it is further Ordered that Lorin W. Willis of Bridge-port is appointed Special Attorney to present such evidence to said Special Commissioner."

As indicated in the order, it was the original intention that the recommendations of the Special Commissioner should be checked by the regular Grievance Committee. As the matter worked out, the testimony taken by Judge Beach was so voluminous that no more than a formal approval was asked

from or given by the Grievance Committee. Any other course would have involved another full hearing and a loss of time and effort which seemed useless under the circumstances. This statement is made in justice to the Grievance Committee and to place the responsibility for the presentments where it belongs, on the Special Commissioner and Special Attorney.

The character and methods of the actual investigators has been formally and informally criticized. As to their character, it is true that men from the columns of Who's Who can seldom be secured for work of this kind. As to their methods, no specific charge of any moment has been substantiated. In the case under consideration questions were asked in cross-examination to show that improper tactics were used by the investigators. The most that was accomplished along that line was to develop that in one or two instances some effort was made to cause the client to be dissatisfied with the results obtained by the lawyer. The attitude of the client on the stand proved that in each instance the attempt was unsuccessful.

As indicated, the principal complaint of the committee of the New Haven County bar was based on organized ambulance chasing. This was the main field of the investigation although other offenses were not excluded. The term has, unfortunately for the legal profession, come into common use and its meaning is well understood. The common essentials of an ambulance chasing case are (1) the victim of an accident, (2) prompt contact by a runner, usually unknown to the victim, (3) recommendation by the runner of a "good lawyer", also usually unknown to the victim, (4) contact by the lawyer and arrangement of terms on a contingent basis, (5) disposition of the case by the lawyer by settlement if possible, or by trial. Variations naturally occur. The runner and lawyer are not always unknown to the victim. Sometimes a doctor is supplied by the lawyer. When these characteristics are repeated in case after case, the conclusion that ambulance chasing exists is inescapable.

After this rather elaborate introduction the case under consideration does not require extended discussion. The respondent is presented on thirty-three counts. When such a large number of counts is under consideration, it is inevitable that some will be and they are stronger than others. Practically

all of them, however, present the characteristics described and convict the respondent of unethical and unprofessional practices as alleged. The testimony of the clients and the members of their families involved in these transactions was plainly voluntary and straightforward and in not a single instance was any bias shown against the respondent. The cumulative effect of this testimony would in itself be sufficient. **In re Herbert W. Salus, 184 Atl. 69, 70.** In addition, however, three of the runners have testified. While Alderman, at least, was clearly not a credible witness, their evidence was sufficiently corroborated by circumstantial and direct testimony to substantiate it in the essential particular of a working financial arrangement with the respondent.

The argument that those without funds and ignorant of legal procedure could not be otherwise served does not appear to be borne out by the facts where the net return to the claimants was in evidence. In the absence of information as to legitimate expenses incurred, it would not be fair to come to any definite conclusion. A general impression that the legal training of the respondent was of small financial advantage to the client is inevitable. In the one case in which a statement was available (Exhibit A) the attempted explanation of the item of $75. for "court expenses" in a case settled out of court was certainly inadequate to say the least.

The case presents a question of fact rather than one of law. If authority is needed it may be found in a note in 73 **A. L. R.** 401 where the cases on the subject up to 1931 are collected. There is also a series of cases starting with **321 Pa. St. 81, 184 A. 69,** which is a veritable mine of precedent. The objections to the practice are well stated in **Chreste vs. Commonwealth, 171 Ky. 77, 186 S. W. 919, Ann. Cas. 1918 E, 122,** where the court says:

"But there is a very wide difference between the unprofessional and undignified practice of personal solicitation of business and the indefensible and vicious practice of employing agents and runners who are not lawyers to go about the country soliciting business and stirring up strife and litigation for a stipulated consideration or a contingent fee. Such agents and runners as these are not restrained in their activities by any professional or ethical sense of propriety. Their sole object is to secure clients for their employers, and they use in this effort such arts and schemes as will get results,

without giving any thought or attention to the disturbing and objectionable nature of the business in which they are engaged. The friends, acquaintances, and associates of an attorney have, of course, the unquestioned right to sound his praises and divert to him such clients as they can persuade, in a legitimate way, to engage his services. But there is a manifest difference between securing business through the influence and efforts of friends, acquaintances, and associates, and securing it through the methods employed by the strictly commercial enterprise of hired agents. . . . . When men accept employment to render such service as these men were expected to render, and their pay depends on the volume of business they can get for their employer, everybody knows that many of them will use every means possible to obtain the business without any regard to the method that may be used to secure it. And it is too plain for argument that, under a just and enlightened administration of the law, practices like this which it is charged Chreste engaged in should not be tolerated by officers of the court."

In The Canons of Ethics of the American Bar Association the following question was asked: "Is it professionally proper for an attorney to employ a 'runner' who, under the guise of a 'Bail Procurer,' persuades those accused of crime to employ the attorney to represent them?" It was answered as follows: "It is disreputable . . . . to employ agents or runners . . . . or to pay or reward, directly or indirectly, those who bring or influence the bringing of cases to an office, or to remunerate policemen, court or prison officials, physicians, hospital attaches or others who may succeed, under the guise of giving disinterested friendly advice, in influencing the criminal, the sick and the injured, the ignorant or others to seek professional services. A duty to the public and to the profession devolves upon every member of the Bar, having knowledge of such practices upon the part of any practitioner, immediately to inform thereof to the end that the offender be disbarred. Canon 28."

As to Connecticut, see **Code of Ethics sections 11 and 25 and General Statutes Sections 5344, 6562.**

To reach this conclusion the evidence as disclosed by the transcript has been carefully analyzed by me. This analysis has led me to find for the respondent generally on rather technical grounds, as to some counts. For instance, in the

sixth count the solicitation is alleged to have been through one Miller and Miller was not sufficiently connected with the respondent on the evidence. In the sixteenth, there was some confusion about the place of accident and the identity of the victim. The twentieth was open to the same objection as the sixth. The seventeenth count involved only personal solicitation by the respondent. Since this question is unnecessary to a decision of this case this count has not been considered by me. **State vs. Rubin, 201 Wis. 30, 229 N. W. 36.** I find for the plaintiff on the following counts: 1, 2, 4, 5, 8, 9, 10, 11, 13, 15, 18, 19, 23, 25—33 inclusive.

Having found against the respondent on the principal issue, there only remains the question of disposition. Judge Platt made the best defense possible under the circumstances and a strong plea for his client, advancing two very pertinent arguments. One, the fact that cases of this kind have not heretofore been prosecuted in Connecticut and, two, the serious results to his client. If his client had seen fit to admit the impropriety of his conduct, such a plea would have had weight with me but since the finding inevitably carries with it the implication that the respondent has testified untruthfully, I have no choice in the matter.

Judgment may enter indefinitely disbarring the respondent.